IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TYLER WAYNE NEES**, | Case No. 2:22-cv-1874-SI |
| Plaintiff, | **ORDER** |
| v. | |
| **PATRICK MANEY, CINDY DIETER, CARA PETERSON, MENDOZA-MONTOYA, MINDI VLAHOS RN, KATHY RIDLING RN, KENNETH TOLKKINEN RN, TINA HAZEN RN, JENNIFER QUICK RN, CHRISTINA COLE RN, and WARREN ROBERTS, in their individual and official capacities.** | |
| Defendants. | |

**Michael H. Simon, District Judge.**

Plaintiff Tyler Wayne Nees, representing himself, brings this civil rights action under 42 U.S.C. § 1983 against eleven Defendants, all of whom work (or worked) for the Oregon Department of Corrections at Eastern Oregon Correctional Institution (EOCI), where Plaintiff is in custody. Plaintiff alleges that Defendants were deliberately indifferent to his medical needs in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

The Court *sua sponte* dismissed Plaintiff's original complaint, with leave to amend, and denied Plaintiff's motion for the appointment of pro bono counsel. ECF 6, 7. Plaintiff filed an

PAGE 1 – ORDER

amended complaint, along with another motion for appointment of pro bono counsel. ECF 10. The Court denied Plaintiff's motion for appointment of counsel. ECF 11. Plaintiff filed additional motions for appointment of counsel, which the Court denied. *See, e.g.*, ECF 18, 28, 29.

Defendants then filed motions to dismiss Plaintiff's amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* ECF 33, 44. Plaintiff filed several other motions, including requesting leave to file an amended complaint (ECF 35) and requesting that the Court appoint pro bono counsel or schedule a judicial settlement conference (ECF 60). For the reasons explained below, the Court GRANTS Plaintiff's latest motion for appointment of counsel, denies without prejudice all other pending motions filed by Plaintiff, and stays consideration of Defendants' motions to dismiss until after counsel accepts the appointment.

## STANDARDS

### A. Motion for Appointment of Pro Bono Counsel

Generally, there is no constitutional right to counsel in a civil case. *United States v. 30.64 Acres of Land*, 795 F.2d 796, 801 (9th Cir. 1986). The Court has discretion, however, under 28 U.S.C. § 1915(e) to appoint volunteer counsel for indigent civil litigants in exceptional circumstances. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). Although the Court may appoint volunteer counsel in exceptional cases, it has no power to make a mandatory appointment. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 301-08 (1989).

In determining whether exceptional circumstances exist, a court evaluates the plaintiff's likelihood of success on the merits and the ability of the plaintiff to articulate his or her claim *pro se* in light of the complexity of the legal issues involved. *Palmer*, 560 F.3d at 970; *Agyeman*, 390

PAGE 2 – ORDER

F.3d at 1103. However, "[n]either of these factors is dispositive and both must be viewed together before reaching a decision on request of counsel under [former] section 1915(d)." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

**B.** *Pro Se* **Pleading Standard**

A court must liberally construe the filings of a self-represented (or *pro se*) plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## ANALYSIS

In considering whether Plaintiff has a sufficient likelihood of success on the merits of his claims, and considering the liberal construction afforded *pro se* pleadings, the Court considers the facts alleged in both Plaintiff's original and amended complaint. Plaintiff's original complaint contained more details regarding the underlying events.

"Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett*

PAGE 3 – ORDER

*v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires a plaintiff to (1) "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain"; and (2) "show the defendant's response to the need was deliberately indifferent." *Id.* (quotation marks omitted).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). It can be satisfied "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (quotation marks omitted). To be liable, a prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Typically, a difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference. But that is true only if the dueling opinions are medically acceptable under the circumstances." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (cleaned up). Additionally, medical malpractice "does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Plaintiff alleges that he severely injured his finger on December 21, 2021. He was seen in medical that day and provided what he describes as a splint. He was provided with an x-ray the next day, on December 22nd. Plaintiff alleges that he received conflicting information regarding

PAGE 4 – ORDER

whether his finger was broken versus dislocated from the x-ray technician who took the images and the person who took the films from the x-ray technician. Regardless, he was not seen by a doctor or other medical provider on December 22nd. He was not removed from work duty and had to continue to work using his hands despite his injured finger. He was not given any pain medication. He submitted "kytes" (prisoner communication forms) requesting to be seen by medical and to see his x-rays. An appointment was scheduled but on January 4, 2023, it was cancelled due to an "urgent/emergent" situation.

Plaintiff continued to submit kytes to the prison medical department complaining about his pain, asking about the status of his finger (broken versus dislocated), asking why he has not been removed from work duty, complaining that his finger was healing crooked, and requesting to be seen. He received written responses telling him that his questions would be forwarded and that he would be seen in the future. One response stated that he had a small fracture and one response stated that his finger was dislocated and not broken. Plaintiff alleges that he was not given any pain medication. Plaintiff was not seen by a medical practitioner until January 19, 2022, when Dr. Richard Carpenter unsuccessfully attempted to relocate Plaintiff's finger and then informed him that surgery was required. He had surgery and missed 60 days of work. He also alleges that on June 15, 2022, his follow up appointment revealed "findings most concerning for posttraumatic secondary osteoarthropathy" and that his finger now has permanent disability, nerve damage, and disfigurement.

Plaintiff also alleges that on December 22, 2021, Dr. Robert P. Blair emailed Plaintiff's original x-ray report to Defendant Dr. Patrick Maney and Dr. Carpenter and that Dr. Maney emailed the report to Blue Mountain Diagnostic Imaging. Plaintiff further alleges that a week later, Dr. Carpenter sent an order to EOCI medical. Dr. Maney allegedly stamped "received" on

PAGE 5 – ORDER

this order, demonstrating his knowledge and receipt. Dr. Carpenter ordered the following: "If you would please flex [Plaintiff] at 50 degrees and take a lateral and let's see if the joint relocates, if it does not we will have to align it properly. We will be happy to see him in the office as soon as possible for an x-ray if that is what is required." No provider, however, followed Dr. Carpenter's order until 20 days later, when Dr. Carpenter himself unsuccessfully attempted to relocate Plaintiff's finger.

Considering these facts, the Court is inclined to reconsider at least some of its conclusions from the Order *sua sponte* dismissing this case. Plaintiff's injured finger, which turned out to be dislocated but there was a question as to whether it was broken, required multiple x-rays, splinting, and surgery. It was a serious medical need, and thus meets the first prong of the Eighth Amendment test. *See, e.g.*, *Thompson v. Rodriguez*, 2023 WL 4414579, at *4 (S.D. Cal. July 7, 2023) ("Broken bones in the hand constitute a serious medical need." (citing cases)); *Witkin v. Lotersztain*, 2023 WL 2751036, at *9 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3456831 (E.D. Cal. May 15, 2023) ("Here, the parties do not dispute that plaintiff's fractured finger presented a serious medical need."); *Rodeski v. McDonald*, 2018 WL 4467920, at *6 (D. Ariz. Sept. 18, 2018) (concluding that a dislocated finger that required x-rays, MRI, and consultation with a hand surgeon created an issue of fact whether it constituted a serious medical need); *Adams v. Ulit*, 2017 WL 772138, at *3 (E.D. Cal. Feb. 27, 2017) (noting that a dislocated finger was a serious medical need, but concluding that the plaintiff failed to show deliberate indifference).

Regarding deliberate indifference, at this stage Plaintiff's allegations show enough likelihood of success against at least some Defendants to support appointing counsel.[1] Plaintiff's allegations include that (1) he was not given pain medication for at least nearly three weeks, (2) he was forced to continue work with a finger that was known to be at a minimum dislocated and possibly broken, (3) he was sent for an x-ray one day after he was injured and yet no medical practitioner followed up with him after his x-ray report for nearly one month, and (4) the one doctor who did order specific action (more than one week after Plaintiff's injury) was ignored by at least Dr. Maney, despite receipt of that order. Additionally, medical personnel repeatedly reviewed Plaintiff's kytes and refused to provide him with or ensure he was provided with medical care. These allegations support that at least some Defendants failed to respond to Plaintiff's medical need. *See Jett*, 439 F.3d at 1096; *see also Witkin*, 2023 WL 2751036, at *9-10 (finding issues of fact at summary judgment on deliberate indifference when doctor delayed x-ray of broken finger by three days and may not properly have immobilized the finger, despite taking the plaintiff off work duty and providing pain medications, even though the plaintiff received a cast and additional treatment more promptly than occurred here).

Regarding Plaintiff's grievances, however, those were adjudicated after he received treatment on January 19, 2022, and his alleged unconstitutionally delayed treatment was finished. "A defendant whose only role in a completed constitutional violation involved the denial of a grievance cannot be liable under § 1983." *Witkin*, 2023 WL 2751036, at *12 (quotation marks omitted). If "the administrative or supervisory defendant knew of an ongoing

---

[1] Allegations of causation in a § 1983 claim "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that a § 1983 plaintiff "must plead that each . . . defendant, through the official's own individual actions, has violated the Constitution"). Plaintiff's allegations may not suffice to show individualized responsibility for all Defendants.

constitutional violation and had the authority and opportunity to prevent the ongoing violation, yet failed to act to remedy the violation," then that defendant can be held liable. *Id.* at *13 (cleaned up).

Regarding the second factor in considering the appointment of counsel, although Plaintiff has sufficiently articulated his claims for the Court to understand them, the Court finds that this case is best served by appointing counsel. Plaintiff's latest motion requesting the appointment of counsel, however, requests an order setting a discovery plan, setting a judicial settlement conference, or appointing pro bono counsel. Because the Court appoints pro bono counsel, the Court denies the other relief, sought in the alternative, requested by Plaintiff.

## CONCLUSION

The Court GRANTS Plaintiff's Motion, ECF 60, only for the requested relief of the appointment of pro bono counsel. The Court Clerk is directed to, by separate order, appoint pro bono counsel. The Court Clerk shall send a copy of this Order along with the order appointing counsel. Within three weeks after accepting the appointment in this case, counsel is directed either to (1) file a Second Amended Complaint or (2) file a supplemental response in opposition to Defendants' motions to dismiss (ECF 33, 44). The Court DENIES all other pending motions by Plaintiff (ECF 30, 35, 36, 47, 52), without prejudice for counsel to renew.

**IT IS SO ORDERED.**

DATED this 23rd day of February, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 8 – ORDER